UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

QUAD/MED CLAIMS, LLC,

                        Plaintiff,

v.

LIBERTY MUTUAL INSURANCE COMPANY,

                        Defendant.

Case No. 12-CV-573-JPS

ORDER

---

Quad/Med Claims, LLC (Quad) originally filed its Complaint in this matter on June 6, 2012, requesting that the Court declare that the defendant, Liberty Mutual Insurance Company (Liberty), must reimburse Quad for sums paid by Quad for injuries suffered by an individual while that individual was covered by an ERISA plan administered by Liberty. (Compl. (Docket #1)). Rather than answering Quad's complaint, Liberty filed a Motion to Dismiss for failure to state a claim. (Mot. Dism. (Docket #8)). The parties have now fully briefed that motion, and the Court will render its decision thereon.

1.     BACKGROUND

Liberty issued an insurance policy to Weather Shield Manufacturing, Inc. (Weather Shield), which covered injuries sustained by Weather Shield's employees within the course and scope of their employment. (Compl. ¶ 5).[1]

---

[1] For the purposes of providing background information, the Court will, as it must in addressing a Rule 12(b)(6) motion to dismiss, accept and discuss all well-pled factual allegations as true. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991).

That policy was in effect on October 2, 2005, when Gary Borchardt, a Weather Shield employee, was injured on the job. (Compl. ¶ 6). Mr. Borchardt filed a worker's compensation claim against Weather Shield, seeking compensation for the injury he sustained. (Compl. ¶ 7). He settled that claim, leaving open only the issue of medical expenses, which was to be addressed by an Administrative Law Judge at a hearing to be held later. (Compl. ¶ 7).

Before that hearing, Mr. Borchardt took a job with Quad Graphics, Inc. (Compl. ¶ 9). At that time, he enrolled in the insurance plan offered by Quad Graphics, which is administered by plaintiff Quad. While covered by Quad's plan, Mr. Borchardt received medical treatment, and submitted his medical bills to Quad. (Compl. ¶ 10). Quad eventually paid $27,918.69 of Mr. Borchardt's medical bills. (Compl. ¶ 10). Quad claims that it did so because it was unaware that Mr. Borchardt's injuries may have arisen from the injury sustained at Weather Shield, and thus those injuries would have been more appropriately covered by Liberty. (Compl. ¶ 10).

After Quad had paid some of Mr. Borchardt's medical expenses, Administrative Law Judge Walter D. Thurow issued a decision on the remaining issue of medical expenses. (Compl. ¶ 8, Ex. B). In his September 27, 2011 ruling, the ALJ made two relevant findings in that opinion: first, that Mr. Borchardt's injury arose out of his employment with Weather Shield; and, second, that (with minor exceptions) all of Mr. Borchardt's claimed medical expenses arising after August 22, 2007, were a result of that injury. (Compl. Ex. B at 14). As a result, the ALJ found "that the respondents [Weather Shield and Liberty] are liable for the unpaid balances," and

demanded that Weather Shield and Liberty pay those unpaid balances within 21 days of the issuance of the opinion. (Compl. Ex. B at 14).

Quad was not a party to the ALJ's hearing or decision, though, and the ALJ did not demand that Liberty reimburse the expenses Quad had previously paid for Mr. Borchardt's medical treatment—despite the fact that the ALJ had, essentially, found that Liberty should be responsible for all expenses arising from Mr. Borchardt's injury. (Compl. Ex. B).

Thus, Quad brought this suit against Liberty. Quad seeks that the Court declare: (1) that the fees Quad paid for Mr. Borchardt are, in fact, excluded from coverage under the plan it extended to him;[2] (2) that Liberty must reimburse Quad for the $27,918.69 Quad paid for Mr. Borchardt's treatment; and (3) declare that Quad is entitled to attorneys' fees. (Compl. ¶ 13).

2. DISCUSSION

Liberty filed a Motion to Dismiss this action, arguing that Quad's complaint fails to state a claim upon which relief can be granted. (Docket #8).

2.1    Motion to Dismiss Standard of Review

In deciding a motion to dismiss, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *King v. Spalding*, 467 U.S. 69, 72 (1984). A plaintiff's complaint will survive a motion to dismiss so long as it "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

---

[2]Quad notes that the plan it extended to Mr. Borchardt expressly excluded "Claims arising out of, or in the course of any occupation…or claims for which the covered person is entitled to benefits under workers' compensation…" (Compl. ¶ 11, Ex. A).

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557 (2007)).

    2.2     Substantive Analysis

Liberty makes several separate arguments as to why the Court must dismiss this action. Distilled to its essentials, Liberty's argument is simple: Liberty argues that the Court lacks jurisdiction to hear this matter under the ERISA statutes.

In its complaint, Quad invoked jurisdiction under 29 U.S.C. §§ 1132(a)(3)(B) and (e)(1). (Compl. ¶ 3). The former section—29 U.S.C. § 1132(a)(3)(B)—is the pertinent one for understanding Liberty's contention that the Court lacks jurisdiction. That section allows "a participant, beneficiary, or fiduciary," to bring an ERISA suit in order "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B).

Riffing on that language, Liberty asserts that the relief Quad seeks is neither "equitable" (Br. in Supp. (Docket #9) 4-5) nor "appropriate" (Br. in Supp. 6–8). Thus, according to Liberty, the Court lacks jurisdiction to hear the matter.

    2.2.1    Equitable Nature of Relief Sought

As mentioned above, Quad seeks three separate declarations: first, that Mr. Borchardt's medical expenses are not covered by the Quad plan; second, that Liberty must reimburse Quad for the medical expenses paid by Quad; and, third, that Quad is entitled to attorneys' fees. (Compl. ¶ 13).

Liberty argues that such relief is not "equitable" relief, as required under 29 U.S.C. § 1132(a)(3)(B). (Br. in Supp. 5). Specifically, it asserts that the relief Quad seeks is not truly equitable, but is instead substantively

compensatory. (Br. in Supp. 5 (citing *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1174 (9th Cir. 2004))).

Quad, on the other hand, argues that it seeks only *declarations* from the Court, as opposed to a monetary judgment, and thus that its action qualifies for jurisdiction under 29 U.S.C. § 1132(a)(3)(B). (Resp. 2-4).

Thus, the broad issue on this point is whether the relief sought by Quad is, in fact, equitable.

Quad cites three cases in support of its contention that the relief it seeks is equitable. (Resp. 2-4 (citing *Winstead v. J.C. Penney Co.*, 933 F.2d 576 (7th Cir. 1991); *Spitz v. Tepfer*, 171 F.3d 443 (7th Cir. 1999); *Bechen v. American Guaranty and Liability Ins. Co.*, 289 F. Supp .2d 806 (W.D. Wis. 2003))). In the first of those cases, *Winstead*, one insurance plan sued another, arguing that the other should be liable for a child's hospital expenses when both plans were potentially liable. 933 F.2d at 577. The district court had originally dismissed the action, holding that the trustees of the plaintiff plan did not have standing as enforcing fiduciaries, as required by 29 U.S.C. § 1132(a)(3)(B). *Winstead v. J.C. Penney Co.*, 740 F. Supp. 1358, 1362–63 (N.D. Ill. 1990). The Seventh Circuit, however, reversed the district court, holding that the plaintiff plan's trustees were enforcing fiduciaries and, therefore, had standing. *Winstead*, 933 F.2d at 578–79. The Seventh Circuit did not discuss the equitable relief requirement of the statute; in fact, there had been no payment of fees or any determination of final expenses when the Seventh Circuit issued its decision. *Id.*, at 577 (noting that the insured child had incurred substantial medical bills, but that both plans refused to pay; further noting that the ERISA action filed by the parents had not yet been decided). Thus, there can be no question that, in *Winstead*, the plaintiff plan was

seeking purely equitable relief: a declaratory judgment that the defendant plan was responsible for the insured's medical expenses.

In *Spitz*, the Seventh Circuit held that a suit fell under 29 U.S.C. § 1132(a)(3)'s "equitable remedies" requirement, when the plaintiff sought declarations and injunctions regarding an ERISA retirement plan, an order requiring repayment of a loan made under that plan, and an order for attorneys' fees. 171 F.3d at 446–47, 449–50.

Finally, in *Bechen*, the defendant insurance company removed the case to the Western District of Wisconsin, asserting jurisdiction under 29 U.S.C. § 1132(a)(1)(B), which allows a plan beneficiary (in *Bechen* the plaintiff insured) to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 298 F. Supp. 2d at 807; 29 U.S.C. § 1132(a)(1)(B). The plaintiff sought an injunction requiring the defendant company to pay his medical expenses; the defendant company filed a cross-claim seeking a declaration that its plan did not cover the plaintiff's expenses. *Bechen*, 298 F. Supp. 2d at 807. The Court did not analyze whether it had jurisdiction over the matter under 29 U.S.C. § 1132(a)(3)(B), but nonetheless issued a declaration that the defendant insurance company was not required to reimburse the plaintiff insured's medical expenses and simultaneously refused to issue an injunction directing payment of the insured's medical bills. *Id.*, at 812.

The Court has also located a number of other cases that it believes pertinent to this issue. In *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993), and *Harris Trust and Sav. Bank v. Provident Life and Acc. Ins. Co.*, 57 F.3d 608, 615–16 (7th Cir. 1995), the Supreme Court and the Seventh Circuit,

respectively, noted that restitution—but not compensatory damages—qualifies as "equitable" relief under 29 U.S.C. § 1132(a)(3)(B). However, "not all relief falling under the rubric of restitution is available in equity." *Great-West Life Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). Rather, only "equitable restitution"—ordinarily in the form of a constructive trust or equitable lien on specific property or funds in a defendant's possession—can be properly viewed as an equitable remedy. *Id.* at 210 (stating that "where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant" and that, therefore, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession"); *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 362-63 (2006); *Street v. Ingalls Memorial Hospital*, 2007 WL 844619, *5-*6 (N.D. Ill. Mar. 15, 2007). Finally, it is clear from the case law of the Seventh Circuit, the Ninth Circuit, and the Supreme Court, that the Court should analyze the substance of the relief sought by Quad, here, to determine the nature of the relief it seeks. *See, e.g.*, *Mertens*, 508 U.S. at 255-57; *Harris Trust*, 57 F.3d at 615-16; *Providence Health Plan*, 385 F.3d at 1174 (quoting *Westaff (USA) Inc. v. Arce*, 298 F.3d 1164, 1166 (9th Cir. 2002); *Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517, 1528 n.5 (9th Cir. 1993), *cert. denied*, 537 U.S. 1111, 123 S.Ct. 901 (2003); also citing *Knudson*, 534 U.S. at 214).

With this background in mind, the Court can formulate several more specific issues to help guide its analysis of the nature of the relief sought by Quad. First, the Court should determine whether Quad seeks equitable

restitution; if it does, then the relief sought is equitable and the Court has jurisdiction over this matter. If not, then the Court should turn to the second question: whether, analyzing the substance of Quad's claim for relief, the Court can conclude that such relief constitutes purely declaratory relief such that the Court should deem it to be equitable relief, and thus to find it has jurisdiction to hear this matter.

As to the first question, Quad is not seeking restitution and, therefore, the Court does not have jurisdiction over this matter on that basis. Quad seeks a general declaration that Liberty owes it money. (Compl. ¶ 13). It does not seek that money from any specific fund operated by Liberty, nor does it seek any specific property from Liberty. Accordingly, under *Knudson* and *Sereboff*, the Court cannot term the relief that Quad seeks to be "equitable restitution." *Knudson*, 534 U.S. at 210; *Sereboff*, 547 U.S. 362–63. Moreover, even if the Court were to allow Quad to amend its complaint on this matter, Quad would not be able to limit the source of the money it seeks because, in fact, Liberty never accepted any payments from Quad. The sums paid by Quad went to Mr. Borchardt's medical providers, as opposed to Liberty. Thus, for all of these reasons, the Court must conclude that Quad does not seek equitable relief in the form of restitution from Liberty.

Turning to the second question, the Court is obliged to determine that, after analyzing the substance of Quad's claim for relief, Quad seeks compensatory damages as opposed to equitable relief. Though they may caption that relief as seeking a declaration, its compensatory nature is inescapable. The Court can see no substantive difference between a demand by Quad for $27,918.69 and a demand for a declaration that Liberty owes $27,918.69 to Quad. Both effectuate the same purpose: a Court-issued

judgment that Quad will use to obtain money from Liberty. Thus, the Court views Quad to be seeking relief other than equitable relief.

Moreover, the cases cited by Quad are all distinguishable from the facts at hand. The *Winstead* parties sought a declaration regarding which insurance plan would be required to pay medical expenses; neither party sought monetary relief. 933 F.2d at 579. In *Bechen*, the court did not even address the jurisdictional aspect of ERISA. 298 F. Supp. 2d at 807. *Spitz*, on the other hand, presents a closer (though ultimately distinguishable) case. In that case, the Seventh Circuit classified as equitable relief a plaintiff's demand for declarations and injunctions regarding an ERISA retirement plan, an order requiring repayment of a loan made under that plan, and an order for attorneys' fees. 171 F.3d at 446–47, 449–50. What ultimately distinguishes that case is the nature of the relief sought, which was predominantly equitable: the plaintiff in *Spitz* sought five separate declarations and an injunction in addition to his request for immediate repayment of a loan and attorneys' fees. 171 F.3d at 446–47. The only arguably non-equitable claim for relief in that case is the demand for repayment of $48,000, which is distinguishable from the demand in this case because it hews much closer to equitable restitution form of relief discussed in *Knudson*, 534 U.S. at 210, and *Sereboff*, 547 U.S. 362–63.

Thus, having found that Quad's requested relief is substantively legal, as opposed to equitable, the Court is obliged to determine that it lacks jurisdiction to hear this matter under 29 U.S.C. § 1132(a)(3).

Finally, before turning to the remainder of its analysis, the Court must note that the parties' respective positions made the Court's decision on jurisdiction a very difficult one. It does, indeed, seem that Quad is getting the

short end of the stick here: it dutifully paid out benefits for an insured only to find out later that another plan should have been held responsible. But then, as discussed above, it sought essentially monetary relief while attempting to couch that relief in equitable terms. Thus, while the Court sympathizes with Quad, the Court certainly cannot accept jurisdiction over this non-equitable suit nor can the Court condone the semantic acrobatics employed by Quad in an attempt to have this suit fall under ERISA's circus tent of jurisdiction.

### 2.2.2 Appropriateness of Relief

Having already determined that Quad's action is not for equitable relief, the Court need not address Liberty's argument. Because the action is not for equitable relief, the Court cannot have jurisdiction over the matter under 29 U.S.C. § 1132(a)(3) regardless of the "appropriateness" of that relief.

### 2.2.3 Jurisdiction Under the Federal Declaratory Judgment Act and 28 U.S.C. § 1331

Quad argues, in the alternative, that, if jurisdiction does not lie under ERISA, then the Court should find jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and subject matter jurisdiction, 28 U.S.C. § 1331. (Resp. 4–5 (citing *GB Battery Techs. v. Gould, Inc.*, 65 F.3d 615 (7th Cir. 1995))).

As a general rule, the Court agrees that ERISA claims may fall under the Court's subject matter jurisdiction, under 28 U.S.C. § 1331, if they do not fall under ERISA's jurisdictional provisions, 29 U.S.C. § 1132(a)(3). The Seventh Circuit has acknowledged that "section 1331 would provide a suitable remedy…were it necessary to plug a hole in ERISA's jurisdictional provisions." *Winstead*, 933 F.2d at 580 (citing *Northeast Dept. ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147,

154–59, 164–66 (3d Cir. 1985); *Airco Industrial Gases, Inc. v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1033 and n. 5 (3d Cir. 1988); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988–91 (4th Cir. 1990)); *see also Connors v. Amax Coal Co.*, 858 F.2d 1226, 1229–30 (7th Cir. 1988) (implying subject matter jurisdiction is possible in stating "[t]o establish a cause of action in district court under section 1331, the trustees must show first that their action against Amax 'arises under' ERISA or federal common law and second that section 1331 jurisdiction is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere"). In *Winstead*, the Seventh Circuit determined there was no need to invoke subject matter jurisdiction in that case, because it found that ERISA's jurisdiction would cover the situation under consideration. *Winstead*, 933 F.2d at 580 ("we do not think [invocation of section 1331] is necessary; there is no hole. We do no semantic violence to section 1132(a)(3) when we interpret it to allow [the form of suit brought by the plaintiffs]").

Nonetheless, if Quad can establish that its action "arises under" ERISA or federal common law and that the action is not preempted by a more specific statutory provision conferring exclusive jurisdiction elsewhere, then the Court has jurisdiction subject matter jurisdiction. *Connors*, 858 F.2d at 1229–30. And, as the *Winstead* court wrote in dicta, "virtually every suit relating to an ERISA plan…can be said to arise under federal law, and hence to be within the jurisdiction of the federal courts by virtue of section 1331." 933 F.2d at 579. This suit is certainly related to an ERISA plan, and, accordingly, arises under federal law. *Id.*; *Jones v. State Wide Aluminum, Inc.*, 246 F. Supp. 2d 1018, 1027 (N.D. Ind. 2003) (citing *Winstead*, 933 F.2d at 579, 581; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)).

Such a finding carries with it the strong potential for abuse: that is, if there is no jurisdiction under 29 U.S.C. § 1132(a)(3)(B), it would seem that there would always be jurisdiction under 28 U.S.C. § 1331, so long as an ERISA plan is involved. In other words, the meaning of 29 U.S.C. § 1132(a)(3)(B) may become meaningless. If any ERISA-plan-related suit could be litigated under 28 U.S.C. § 1331, there would be no reason for 29 U.S.C. § 1132(a)(3)(B)'s limitations on parties and remedies to exist; any party could bring a suit for any form of relief under 28 U.S.C. § 1331, so long as an ERISA plan was involved.

But the Seventh Circuit considered this potential in *Winstead* and determined that, nonetheless, the Court's subject matter jurisdiction may "plug" the holes in ERISA's jurisdictional provisions. The Court has found a hole here, having determined that it lacks ERISA jurisdiction over the matter. Accordingly, the Court determines that it is appropriate to fill that hole using its 28 U.S.C. § 1331 subject matter jurisdiction.

3. CONCLUSION

Having determined that the Court has jurisdiction over this matter under its subject matter jurisdiction, 28 U.S.C. § 1331, it will direct Quad to file an amended complaint that reflects this new basis for jurisdiction. Furthermore, because jurisdiction lies under 28 U.S.C. § 1331, there is no need for Quad's relief to be limited to purely equitable relief. Accordingly, Quad should re-caption its relief sought to reflect precisely that which it seeks: (1) a declaration holding that the expenses paid by Quad are excluded from Quad's plan; and (2) a monetary award of $27,918.69 against Liberty. Attorneys' fees, as initially sought by Quad, will not be available under 29

U.S.C. § 1132(g), because this action will no longer be "under" the ERISA subchapter, it instead falling under 28 U.S.C. § 1331.

Despite denying Liberty's Motion to Dismiss, the Court should note that it is ultimately skeptical of the likelihood of Quad prevailing on its claims. As Liberty points out in its briefs in support of its Motion to Dismiss, the ALJ's prior determination seems as if it will not conclusively establish that Liberty is responsible for the fees paid by Quad. (Br. in Supp. 6–7; Reply 2–3). The ALJ's decision ordered that Liberty pay only the "unpaid balance" of Mr. Borchardt's medical expenses, whereas those expenses claimed by Quad were, indeed, paid and thus do not seem to be covered by the ALJ's decision. (Compl. Ex. B at 14). Moreover, the ALJ stated that his decision was "based on testimony at the hearing and all of the Exhibits submitted"; it is unclear that the parties submitted any evidence to the ALJ relating to the claims paid for by Quad. (Compl. Ex. B at 13–14). In fact, Quad was not even a party to the ALJ's hearing and decision. Thus, evidence on the claims paid by Quad very well may not have been before the ALJ. Nonetheless, the Court must accept all well-pleaded facts as true. *King*, 467 U.S. at 72. Thus, based upon Quad's well-pleaded fact that the ALJ ruled that Mr. Borchardt's medical expenses arising after August 22, 2007, arose from the Weather Shield incident, the Court must conclude that those claims are plausible on their face. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555-557). If, however, Liberty is able to produce evidence in discovery that the ALJ lacked any evidence on which it could determine that the Quad-paid claims stemmed from the Weather Shield incident, the Court may very well have to conclude that the ALJ's decision lacks any precedential effect on which the Court could base an award against Liberty.

Page 13 of 15

Case 2:12-cv-00573-JPS   Filed 01/09/13   Page 13 of 15   Document 14

Finally, the Court notes that it is in receipt of Quad's Motion for Ruling (Docket #13), which seeks that the Court rule on Liberty's Motion to Dismiss. The Court acknowledges that Liberty's motion has been outstanding for quite some time, as it was fully briefed as of September 6, 2012. (Mot. for Ruling ¶ 3). But Quad should understand that the Court is quite busy with its many other cases; instead of filing a motion, Quad could have called the Court's chambers to get an update on this matter. Had it done so, Quad likely would have learned that this matter was in the process of being addressed. Nonetheless, with this order, the Court now provides the parties with that which Quad sought with its Motion for Ruling. As such, the Court will deny that Motion for Ruling as moot.

Accordingly,

IT IS ORDERED that defendant Liberty Mutual Insurance Company's Motion to Dismiss (Docket #8) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that plaintiff Quad/Med Claims, LLC, shall, not later than January 28, 2013, at 5:00 p.m., file with this Court an Amended Complaint embodying the Court's above-discussed changes;

IT IS FURTHER ORDERED that, in order that this case move forward in a timely manner, counsel for the parties are directed to file a joint Rule 26 plan on or before February 8, 2013; such report to include cutoff dates within which to complete various pretrial tasks in order that this case be concluded before November 1, 2013, including trial, if necessary.

The Court will then hold a scheduling conference in this matter on February 13, 2013, at 9:00 a.m., in Room 425 of the Federal Courthouse, 517 E. Wisconsin Ave., Milwaukee, Wisconsin. To accommodate counsel's

schedule, appearance may be made by telephone; however, neither cell phones nor calls made over a speaker phone may be used, as both technologies are incompatible with the Court's sound/teleconferencing equipment. The Court will initiate the call. Therefore, if appearing by telephone, counsel must notify the Court, in advance, of the direct number at which they may be reached; and

IT IS FURTHER ORDERED that plaintiff Quad/Med, LLC's Motion for Ruling (Docket #13) be and the same is hereby DENIED as moot.

Dated at Milwaukee, Wisconsin, this 9th day of January, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge