UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| QUAD/MED CLAIMS, LLC,<br><br>                        Plaintiff,<br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br>                        Defendant. | Case No. 12-CV-573-JPS<br><br><br><br>ORDER |

      This suit has been on thin ice since its inception. Twice now, the Court has offered the plaintiff, Quad/Med Claims, LLC ("Quad"), an opportunity to avoid dismissal. Unfortunately, even with those two chances, Quad has not presented the Court with any persuasive case law that could support its entitlement to relief. Also unfortunate is Quad's failure to recognize that its claims are lacking, concede defeat in this action, and pursue a judgment through some alternate means.

      Thus, for the reasons that follow, the Court is obliged dismiss this case under Rule 12(b)(6) of the Federal Rules of Civil Procedure for Quad's failure to state a claim upon which relief can be granted. Accordingly, the Court must deny as moot the cross-motions for summary judgment filed by Quad and the defendant, Liberty Mutual Insurance Company ("Liberty").

1.    BACKGROUND

      In its previous order, which required the parties to file additional briefs on the issue of whether Quad may be entitled to relief under the Declaratory Judgment Act, the Court set forth the background of this case. (Docket #42). It restates that background, as follows.

On October 5, 2005, Gary Borchardt was injured while working at Weathershield Manufacturing ("Weathershield"). (DSF ¶ 2).[1] At that time, Weathershield had a worker's compensation insurance policy through Liberty. (DSF ¶ 1). Therefore, Mr. Borchardt filed a worker's compensation claim against both Weathershield and Liberty in the Worker's Compensation Division of the Wisconsin Department of Workforce Development. (DSF ¶ 3). Liberty and Weathershield settled that claim on August 22, 2007. (DSF ¶ 4). But the settlement left open the question of whether Liberty would be required to pay for Mr. Borchardt's medical expenses arising after the settlement date. (SF ¶ 4).

Shortly thereafter, Mr. Borchardt joined Quad/Graphics, Inc., as an employee, and enrolled in the health coverage offered by Quad. (PPFF ¶ 3). He did not inform Quad of his worker's compensation claim against Liberty and, therefore, Quad covered his medical treatment, which cost in excess of $25,000.00. (PPFF ¶¶ 6–7).

Quad discovered the worker's compensation claim after Mr. Borchardt and Liberty engaged in a hearing before an ALJ to resolve the outstanding question of whether Liberty would be required to pay Mr. Borchardt's medical expenses that arose after the August 22, 2007 settlement date. (SF ¶ 5). At that hearing, Mr. Borchardt submitted a WKC-3 form, which set forth all of his post-settlement medical expenses. (DPFF ¶ 7; Docket #17, Ex. 2, at 16). That form made clear that Quad had paid for a substantial

---

[1]The parties have submitted four separate statements of fact: (1) the plaintiff's statement of stipulated facts ("PSF") (Docket #25); (2) the plaintiff's proposed findings of fact ("PPFF") (Docket #26); (3) the defendant's statement of stipulated facts ("DSF") (Docket #31); and (4) the defendant's proposed findings of fact ("DPFF") (Docket #32).

portion of Mr. Borchardt's claims, and that there was additionally a large outstanding balance. (Docket #17, Ex. 2, at 16). The ALJ analyzed Mr. Borchardt's claims and determined that the majority of them arose from the October 2, 2005, accident. (Docket #17, Ex. 2, at 14). However, instead of stating that Liberty was responsible to cover all of Mr. Borchardt's claims, the ALJ ordered only that Liberty was liable to pay the unpaid balances of Mr. Borchardt's claims. (Docket #17, Ex. 2, at 14). Liberty did, indeed, pay those balances. (DPFF ¶ 11).

That, however, left Quad holding the bag on the portion of Mr. Borchardt's claims that it had paid. Understandably upset with that outcome, Quad filed suit against Liberty in this Court. (Docket #1). At the time, Quad invoked jurisdiction pursuant to 29 U.S.C. §§ 1132(a)(3)(B) and (e)(1). (Docket #2, at ¶ 3). Liberty believed that jurisdiction was inappropriate under those sections, and filed a motion to dismiss on that basis. (Docket #8). The Court agreed, but nonetheless did not dismiss the case, because it found that jurisdiction could lie under 28 U.S.C. § 1331. (Docket #14). It allowed Quad to amend its complaint, which Quad did. (Docket #17).

After Quad had amended its complaint, the parties engaged in discovery, and have now filed cross-motions for summary judgment. (Docket #23, #27). Those motions were fully briefed and properly before the Court. (Docket #24, #28, #33, #35, #39, #41).

The Court reviewed the parties' submissions on their motions for summary judgment, and determined that dismissal was likely appropriate because Quad had failed to state a claim upon which relief could be granted. (Docket #42). However, it decided to, once again, give Quad another chance to support its claims, and requested that Quad file a brief addressing whether

Page 3 of 14

Case 2:12-cv-00573-JPS   Filed 09/24/13   Page 3 of 14   Document 48

it is entitled to make a claim under the Declaratory Judgment Act. (Docket #42). Quad filed that brief, as requested, and Liberty filed a response. With the benefit of those submissions, the Court determines that it must dismiss this action for the reasons which follow.

2. DISCUSSION

In its order on Liberty's motion to dismiss, the Court determined that it lacked jurisdiction to hear this case under 29 U.S.C. § 1132(a)(3)(B), because Quad seeks compensatory relief, as opposed to equitable relief (the latter of which is required for 29 U.S.C. § 1132(a)(3)(B) jurisdiction). It found, however, that it may have federal question jurisdiction under 28 U.S.C. § 1331, because the suit relates to an ERISA plan, and therefore can be said to arise under federal law. (Order on Mtn. Dism. at 11 (citing *Winstead v. J.C. Penney Co.*, 933 F.2d 576, 579 (7th Cir. 1991))). Thus, the Court allowed Quad to file an amended complaint, which Quad did. (Order on Mtn. Dism; Docket #17).

In doing so, however, Quad did not provide the Court with any statement of a claim upon which the Court could grant relief. (Docket #17 (including sections setting forth the parties, basis for jurisdiction, venue, facts, and a request for relief, but not setting out any legal basis for relief)). The Court identified that deficit in its previous order, and required that Quad file a brief establishing some legal basis for its requested relief. (Order Req. Briefing at 5 (noting that "Quad has, quite literally, failed to state a claim upon which relief could be granted," and requiring Quad to address whether relief may be appropriate under 28 U.S.C. § 2201 or some other legal theory)).

Quad did file that requested brief. (Docket #44). Therein, it asserts that the Court has the power to grant a declaratory judgment in this case because

an "actual controversy" between the parties exists. (Docket #44, at 2–3). Quad attached a second amended complaint to its brief, in which it inserted, under the "Jurisdiction" heading, the following paragraph: "This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and for further relief pursuant to 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties as set forth below." (Docket #44, Ex. A at ¶ 4[2]). Quad did not, however, include any other substantive changes in its second amended complaint.(*See* Docket #44, Ex. A). Most notably (and, in the end, fatally), Quad did not set forth *any* cause of action or legal basis for relief against Liberty. Instead, they relied solely on the Declaratory Judgment Act as the basis for relief (and even that claim is included under the jurisdictional section of the second amended complaint, instead of set off as a legal basis for relief). As the Court will discuss further, that is inappropriate because the Declaratory Judgment Act is not a separate claim for relief. Thus, while the Court may be able to claim federal question jurisdiction[3] over this

---

[2]The Court notes that this citation is to the *first* paragraph 4 of Quad's second amended complaint. This clarification is necessary because, apparently, in drafting the second amended complaint, Quad's attorney could not even be bothered to renumber the subsequent paragraphs.

[3]Here, the Court notes that, by extension, because it has federal question jurisdiction, it also has jurisdiction to entertain Quad's claim for relief under the Declaratory Judgment Act. To be sure, the Declaratory Judgment Act cannot be an independent source of subject matter jurisdiction, and a federal court asked to issue a declaratory judgment must derive subject matter jurisdiction from some other source. *See Ameritech Benefits Plan Comm. v. Commc'n Workers of America*, 220 F.3d 814, 818 (7th Cir. 2000), *cert. denied* 531 U.S. 1127 (2001); *Frank Bros., Inc. v. Wisconsin Dept. of Transportation*, 297 F. Supp. 2d 1140, 1142 (W.D. Wis. 2003), *aff'd* 409 F.3d 880 (7th Cir. 2005); *TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 634 (7th Cir. 2003). That is satisfied here, where the Court has already determined that it may derive its subject matter jurisdiction due to the involvement of an ERISA plan. *See, e.g.*, *Winstead*, 933 F.2d at 579.

action as involving an ERISA plan, *e.g. Winstead*, 933 F.2d at 579, it must dismiss this action for failure to state a claim upon which relief can be granted.

Even if the Court has subject-matter jurisdiction over the matter, it cannot exercise that jurisdiction if the parties do not comply with Article III of the Constitution, requiring a case or controversy. *Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) (citing *Deveraux v. City of Chicago*, 14 F.3d 328, 330–31 (7th Cir. 1994)); *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 730 (2d Cir. 1993) (requiring that the plaintiff's complaint "allege some substantive claim that triggers the Court's adjudicative function") (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). In the past, the Seventh Circuit has looked to Supreme Court case law to fashion what it believes to be the appropriate test to determine whether a justiciable controversy exists. *See, e.g.*, *Wisconsin Central*, 539 F.3d at 759 (citing *MedImmune, Inc v. Genetech, Inc.*, 549 U.S. 118, 127 (2007)); *Deveraux*, 14 F.3d at 330–31 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Supreme Court laid its foundation for this test in *Aetna*, where it stated that:

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. [citations omitted]. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.

300 U.S. at 240-241. In *MedImmune*, the Supreme Court clarified that definition, holding that "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. at 127. Much of the Seventh Circuit's (and practically every other circuit's) case law on this topic derives from cases brought by "natural defendants" against "natural plaintiffs," in which the natural defendants—proceeding as plaintiffs—seek an early resolution of a claim threatened by a natural plaintiff, so that the natural defendant can proceed with a business opportunity. *See, e.g.*, *Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 711–12 (7th Cir. 2002) (citing 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, § 2751, pp. 455–56 (3d Ed. 1998)). In other words, the plaintiff is a party who expects to be sued; to clarify its legal rights, it brings a declaratory judgment suit against the party or parties who plan to sue it. When this is the case, the issue largely revolves around whether the threatened suit is so concrete as to make the natural defendant's declaratory judgment suit ripe for review. *See, e.g.*, *Id.*

Thus, here, there are several major distinctions between the normal declaratory judgment case and the one under review. To begin, the party who is being sued (Quad) is, in fact, the natural defendant. Relatedly, in the normal case, the issue is one of ripeness, and the question often turns on whether the threatened suit is concrete enough to trigger the reviewing court's ability to act. On the other hand, there is much less concern over whether the matter is ripe. It certainly is, because Liberty arguably owes money to Quad, which it is refusing to pay, despite the existence of a state ALJ's order which seems to assign liability to Liberty.

Page 7 of 14

Case 2:12-cv-00573-JPS    Filed 09/24/13    Page 7 of 14    Document 48

This prompts the last major distinction: the lack of a legal claim. In the normal case, the reviewing Court may examine the threatened suit to determine its concreteness, and could possibly determine that declaratory judgment is inappropriate if the threatened suit lacked a legal basis. Here, on the other hand, because there is no threatened suit, the Court cannot look to some underlying cause of action to determine its concreteness. Rather, the issue stems more from the lack of any actual legal claim between the parties. Quad has not alleged any *actual* claims against Liberty in either of its amended complaints. Instead, Quad has simply asserted the Declaratory Judgment Act as its basis for relief. This falls far outside of the normal situation examined by Courts and which the Seventh Circuit has had ample opportunity to expound upon.

This seems much more akin to an abuse of the Declaratory Judgment Act. The purpose of the Declaratory Judgment Act is

> to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued. It relieves potential defendants "from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure—or never." It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty and it helps avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants.

Section 2751 *Purpose of Declaratory Judgments*, 10B FED. PRAC. & PROC. CIV. (3d ed.) (citations omitted). That is not what Quad is attempting to use the Act for. Instead, because the Court has determined that Quad's ERISA claim

does not lie, and Quad has failed to plead any other legal basis that would entitle it to relief, Quad seems to be trying to use the Act as a shoehorn to fit a claim for damages into this case. After the Court dismissed Quad's ERISA claim, and allowed Quad the opportunity to amend its complaint, Quad should have realized that it lacks a legal basis for relief against Liberty and voluntarily dismissed the case. Instead, Quad chose to forge ahead without a legal basis for its claim, using the Act as its tool. That is not a proper use of the Act, and the Court must accordingly dismiss Quad's complaint.

The Second Circuit has interpreted Article III's standing requirement fairly strictly, in a way that would clearly limit Quad's ability to bring this suit under the Declaratory Judgment Act, and which further supports the Court's conclusion. The Second Circuit has clarified that Article III standing is not met through a plaintiff's request for a declaratory judgment, alone. *Asbestos Litig.*, 14 F.3d at 731 ("However, a request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights.") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)). As the Seventh Circuit has also done, *e.g. Deveraux*, 14 F.3d at 330–31, the Second Circuit specifically noted that the Declaratory Judgment Act "explicitly incorporates the Article III case or controversy limitations." *Asbestos Litig.*, 14 F.3d at 731 (citing 28 U.S.C. § 2201; *Aetna*, 300 U.S. at 239–40). The Second Circuit expanded upon this logic further, though, explicitly holding that the Declaratory Judgment Act does not "provide an independent cause of action. Its operation is procedural only—to provide a form of relief previously unavailable." *Asbestos Litig.*,

14 F.3d at 731 (citing *Aetna*, 300 U.S. at 240).[4] In other words, the Act provides only a remedy; the legal basis for that remedy must exist separately because the Act, itself, is not a cause of action.[5]

The issue for Quad is that it has failed to allege any legal claim on which it would be entitled to relief against Liberty—Quad has no substantive claim of right against Liberty. Without the ERISA claim, Quad has not pled any cause of action (nor will the Court craft one for it). Even in its briefs on the summary judgment issue, Quad has failed to allege a claim for relief beyond the existence of an "insurance dispute," and the existence of the doctrine of "res judicata." (*See, e.g.*, Quad's Br. in Supp. at 4; Quad's Reply at 1–3). Moreover, even if Quad attempted to allege a contract dispute between the parties, that claim would not lie because there is no privity between them. They are separate insurers, and their only connection is the existence of a state ALJ's opinion on a coverage issue between Liberty and the insured, *to which Quad was not even a party*. With all said and done, the Court has

---

[4] The Second Circuit recently re-affirmed this holding in *Springfield Hospital v. Hoffman*, 488 Fed. Appx. 534, 535 (2d Cir. 2012) (noting that plaintiff could "maintain an action for a declaratory judgment without an underlying federal cause of action," and that "[a] prayer for relief, standing alone, simply does not satisfy the requirement that a case or controversy exist.") (citing *Asbestos Litig.*, 14 F.3d at 731; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 f.3d 17, 21 (2d Cir. 1997)).

[5] The Seventh Circuit has also noted this distinction. *Illinois v. City of Chicago*, 137 F.3d 474, 476–77 (7th Cir. 1998) (noting that the Declaratory Judgment Act is a grant of "a particular remedy," but does not "dispense[] with the need to find a source of rights."). Furthermore, now-Circuit Judge Hamilton adopted this point of law in *Morris v. Manufacturers Life Ins. Co.*, No. EV 95-142-C H/H, 1997 WL 534156, at *10 (S.D. Ind. Aug. 6, 1997) (citing *Asbestos Litig.*, 14 F.3d at 731, for the proposition that "[i]t is well established that the Declaratory Judgment Act does not create an independent cause of action. It only provides an additional form of relief.").

repeatedly given Quad the opportunity to establish the existence of a claim upon which the Court could grant relief. Even with those multiple opportunities, Quad has failed to do so. And, because it lacks any claim for relief, such relief—even under the Declaratory Judgment Act—would be inappropriate.

Thus, because Quad has failed to allege any claim upon which the Court could grant the relief it seeks, the Court is left to dismiss this case. Those are not independent claims for relief. To sum up, the Court finds that it does have jurisdiction, here, under 28 U.S.C. § 1331, which supports the Court's jurisdiction under the Declaratory Judgment Act. However, Quad's amended complaint and proffered second amended complaint both fail to state a cause of action on which the Court could grant relief. Thus, given the lack of any legal controversy between the parties, and the fact that the Declaratory Judgment Act is not an independent basis for relief, the Court is obliged to dismiss this action.

This conclusion finds further support in two additional factors. First, the Court has discretion to determine whether to use its authority to issue declaratory judgments, and exercises that discretion, here, to decline to do so.[6]

Second, though this is subsumed in the Article III analysis, the Court must also note that Quad's standing to pursue this action is on shaky ground. Under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), a plaintiff

---

[6] *See, e.g., Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995); *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 985–86 (noting that, under *Wilton*, district courts have the discretion over whether to dismiss an action seeking a declaratory judgment, and overruling several cases that had used a *de novo* standard in reviewing district court dismissals of actions seeking declaratory judgment).

must establish the following elements to show standing: (1) that it suffered an "injury in fact"; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that the injury likely would be redressed by a favorable decision. Assuming that the first and third of those elements are met, the Court still identifies a weakness in the second. Arguably, here, it is Liberty's refusal to reimburse Quad that form the conduct to which Quad's injury is fairly traceable. The Court, however, points out that Liberty's refusal to do so is not, necessarily, wrongful, and Quad's initial payment was not caused by any of Liberty's actions. On the first of those points, nothing in the state ALJ's opinion required Liberty to pay the amounts that Quad now seeks and, therefore, Liberty is not violating any judgment by refusing to pay those amounts. Furthermore, Liberty did not engage in fraud or any other abuse to convince Quad to cover those amounts to begin with. Rather, Quad covered those amounts in error, likely because: (a) it failed to perform its due diligence in verifying the insured's health status and prior insurance prior to covering his claims; (b) the insured concealed or inadvertently failed to disclose that information; or (c) some combination of the two. For these reasons, the Court believes that Quad's standing to pursue this claim is questionable. However, given that the Court has some question on this issue—particularly its concern that, arguable, Quad's injury is traceable to Liberty's refusal to pay—the Court has instead determined that the matter is best dismissed for its failure to state a claim.

Finally, the Court must note that it dismisses this case under Rule 12(b)(6), of the Federal Rules of Civil Procedure, for Quad's failure to state a claim upon which relief can be granted. Though the Court has discussed

evidence that the parties have set forth,[7] its having done so was for no other reason than to provide background. The Court's dismissal of the case rests solely on the plaintiff's amended complaint and second amended complaint, which the Court has determined both fail to state a claim upon which it could grant relief. Therefore, while the parties have both moved for summary judgment, pursuant to Rule 56, the Court finds that this matter is best addressed pursuant to Rule 12(b)(6), and accordingly will *sua sponte* dismiss this case with prejudice thereunder. As such, the Court will also deny as moot both of the parties' motions for summary judgment.

3. CONCLUSION

For the foregoing reasons, the Court will dismiss this matter with prejudice pursuant to Rule 12(b)(6). In accordance therewith, the Court will also deny the parties' motions for summary judgment as moot.

Last, the Court feels it appropriate to remark on the equities of this case. Without a doubt, it would appear that Quad has been left high and dry, responsible for expenses that Liberty should have paid for. Thus, there is some logic to Quad's having brought suit against Liberty. In fact, that decision may even have been meant to spare the insured, Mr. Borchardt, from the unenviable task of having to defend himself against a suit by Quad

---

[7]Parenthetically, the Court notes that, to the extent it has relied on any facts outside of Quad's multiple complaints, those facts have come from either the parties' insurance policies or the state ALJ's opinions. Quad referenced each of those items in his amended complaint and second amended complaint and, therefore, the Court may appropriately consider them under the incorporation-by-reference doctrine. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)). As such, even if the Court were to have relied on those materials, it could still address the matter under Rule 12(b)(6).

to recover its expenses from him, before he could, in turn, pursue a claim against Liberty to reimburse him for those amounts. But, no matter where the equities may lie as against Liberty, a suit does not. There is no privity between Quad and Liberty and, as the Court has mentioned, Liberty has not actually done anything wrong or illegal. For all of these reasons, the Court is left with no choice but to dismiss this case.

Accordingly,

IT IS ORDERED that this matter be and the same is hereby DISMISSED with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; and

IT IS FURTHER ORDERED that, the Court having dismissed this matter, *sua sponte*, under Rule 12(b)(6), the parties' motions for summary judgment (Docket #23, #27) be and the same are hereby DENIED as moot.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of September, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge